UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:07-CV-141-R

HAROLD GARDNER                                                                                PLAINTIFF

v.

WAL-MART STORES EAST, LP                                                        DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court upon the Defendant's Motion for Summary Judgment (Docket # 15).  The Plaintiff responded (Docket #18), and the Defendant replied (Docket #26).  This matter is ripe for adjudication.  For the following reasons, the Defendant's Motion is **GRANTED**.

**BACKGROUND**

In November 2005, the Plaintiff, Harold Gardner, was hired by the Defendant to work as a Loss Prevention Associate at the Wal-Mart retail store in Hopkinsville, Kentucky.  The job description for a Loss Prevention Associate indicates that such an Associate was to apprehend shoplifters, participate in the prosecution of shoplifters and other alleged crimes, work with the closed circuit television systems, ensure a safe environment, monitor the store for signs of theft, and ensure the proper execution of emergency response procedures, in addition to a number of other requirements.  The job description also states that such an Associate is to maintain and appropriately communicate confidential and private information regarding investigations and apprehensions.  Gardner completed the training for loss prevention associates and completed computer-based learning programs on the importance of integrity in loss prevention.  In the summer of 2006, Wal-Mart reorganized its store security department, which changed the Loss

Prevention Associate position into the Asset Protection Associate position.

Asset Protection Associates field calls from credit card companies who suspect a card has been stolen and used at the store. In August 2006, Gardner received a call from Wal-Mart's Investigative Services regarding its investigation into use of a credit card at the Hopkinsville store that had been reported stolen. Investigative Services asked Gardner to compile information on the credit card and the transactions. After obtaining the card number, Gardner accessed the account's transaction history. He also pulled the video surveillance on the specific transaction. When Gardner reviewed the video, he recognized the individual using the card as Dawn Roberts, the wife of Gardner's friend George Roberts.

Several weeks later, the Store received a call about the investigation from a family member of the suspected individual. The caller indicated that Gardner had disclosed the existence of the investigation. Asset Protection Supervisor Jerry Wilson questioned Gardner about the revelation, and on September 8, 2006, Gardner drafted the following statement in response:

> I was contacted by Nancy from Investigative Services concerning a credit card that was reported stolen. She gave me the card number and the date it was used. Upon further investigation I realized the person using the card was the wife of a fishing partner. I saw him and said I was looking into a situation at work and it involved your wife. I told him I could not go into details but it involved a credit card that was reported as stolen. I told him he needed to check into it. I said it's probably a miss [sic] understanding of some sort. This was the extent of our conversation. I did not call his wife at anytime [sic] to discuss the matter.

Gardner testified that he knew he was not supposed to discuss pending matters with anyone other than Wal-Mart management or those with a need-to-know, but he did not believe this particular situation was a "pending matter." Gardner felt it was not "pending" because nothing further had happened with the investigation and it turned out that the credit card Dawn

2

Robert's used belonged to her niece. He thought there has simply been a misunderstanding in the family. However, Gardner testified that his initial belief about the nature of the situation turned out to be incorrect, and forces were at work in the Roberts family of which he was unaware.

On September 12, 2006, Gardner was terminated for "Gross Misconduct-Integrity Issue," specifically, revealing confidential security information. Wal-Mart's Coaching for Improvement Policy provides:

> Gross misconduct will not be tolerated. Coaching for Improvement will not be used to address gross misconduct. The employment of an Associate who is deemed to have engaged in gross misconduct is subject to immediate termination. Associates terminated for gross misconduct are not eligible for re-hire. The following list is not all-inclusive but serves as examples of conduct, which are usually classified as gross misconduct and may result in immediate termination:
> . . .
> Dishonesty/Compromised Integrity

Gardner filed a Charge of Discrimination with the Kentucky Commission on Human Rights and the Equal Employment Opportunity Commission (EEOC). On May 24, 2007, the EEOC issued the Plaintiff a right to sue letter, and the Plaintiff filed his complaint pro se in this Court on August 21, 2007, claiming he was terminated from his employment because of his race, in violation of Title VII of the Civil Rights Act of 1964.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences

against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The burdens of proof in federal Title VII race discrimination in employment cases were first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later clarified by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 ( 1981).  There are three stages of proof in Title VII cases.  *Kline v. TVA*, 128 F.3d 337, 342 (6th Cir. 1997).  "First, the plaintiff must prove a *prima facie* case of discrimination."  *Id.* (citing *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802 (1973))).  If the plaintiff establishes a "*prima facie* case, the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"  *Id.* (quoting *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 804)).  "If the

defendant carries this burden, the plaintiff must prove that the proffered reasons were pretextual." *Id.* (quoting *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 804)). The plaintiff establishes pretext "by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Id.* at 342-43 (citing *Burdine*, 450 U.S. at 256).

**1. *Prima Facie* Case**

"A plaintiff may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of circumstantial evidence which creates an inference of discrimination." *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995) (internal citations omitted). Here, the Plaintiff has presented no direct evidence of discrimination. Instead, he has attempted to introduce circumstantial evidence which he claims creates an inference of discrimination. Under this approach, to establish a *prima facie* case, the Plaintiff must show "(1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class...[or]...that similarly situated non-protected employees were treated more favorably." *Id.* (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992)).

The Defendant does not deny that the Plaintiff is a member of a protected class or that he was subject to an adverse employment decision. They have not argued that the Plaintiff was not qualified for his position. However, the Defendant does contend that the Plaintiff cannot *establish a prima facie case because he cannot establish either of the parts of the fourth prima* facie prong. The Plaintiff was replaced by a person within his protected class because he was replaced by an

African-American, Cornelius Smith; therefore, he cannot meet the first part. *Id.* Further, the Defendant argues that the Plaintiff cannot show he was treated differently than a similarly-situated non-protected employee. *Id.*

In his complaint, the Plaintiff identified the circumstances under which he believed he was discriminated against, stating:

> Keith Griese [sic] a white male employee of Wal Mart [sic] #0653 in late 2004 violated company policy by stealing guns and selling them for his own personal gain, Wal-Mart demoted him and transferred him to another Wal-Mart, when the policy calls for immediate termination. When I violated company policy I was immediately terminated with[out][1] any options of transfer of any kind.

The Plaintiff compares himself with the non-protected Keith Grise, a District Loss Prevention Supervisor. In order for two or more employees to be considered "similarly-situated," the Plaintiff "must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [non-protected] employees who he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). As to what constitutes "all relevant aspects," the Sixth Circuit has said that courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich v. Goodyear Tire & Rubber* Co., 154 F.3d 344, 352 (6th Cir. 1998).

In October 2005, prior to the Plaintiff's employment at Wal-Mart, Keith Grise, a District Loss Prevention Supervisor (DLPS), was subject to an ethics investigation. As District Loss Prevention Supervisor, Grise was responsible for the supervision of several stores in Kentucky and

---

[1] The word [out] was written on the complaint by hand.

6

Tennessee. He was investigated on allegations that he had violated several store policies. Grise was found to have violated (1) the Associate Purchase Policy by purchasing firearms that could have been available for customers to purchase, (2) the Open Door Communications Policy by refusing to give a written statement of a verbal account in an investigation, (3) the policy against Employment of Relatives by hiring a step-nephew, and (4) the Statement of Ethics-Misappropriation of Assets by taking co-ax cable home for personal use. Grise was terminated from his DLPS position, but was reinstated after completing Decision Day Coaching, where he and a supervisor went over what was wrong with his past behavior and created a plan of action for his improvement.

The Sixth Circuit has held that in cases alleging differential disciplinary action, like this one, that to be "similarly-situated," the comparison employee (1) "must have dealt with the same supervisor," (2) "have been subject to the same standards," and (3) "have engaged in the same conduct 'without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ercegovich*, 154 F.3d at 352 (citing *Mitchell*, 964 F.2d at 583).

As Wal-Mart Loss Prevention/Asset Protection employees, Gardner and Grise were presumably subject to the same standards. However, there is no evidence that they dealt with the same supervisor. Grise was investigated by a completely different set of decision-makers who determined the disciplinary action to take: Craig Ledbetter, Regional Director; J.P. Suarez, Senior Vice President of Loss Prevention; and Kelly Young, Divisional Director of Loss Prevention. The Plaintiff's supervisor Jerry Wilson, Market Asset Protection Manager, investigated his conduct and made the decision to terminate him. The Sixth Circuit has "held that a plaintiff and a comparable employee are not similarly situated where they were disciplined by different ultimate

decision-maker." *Barry v. Noble Metal Processing, Inc.*, 2008 U.S. App. LEXIS 10305, at *12 (6th Cir. May 7, 2008) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762-63 (6th Cir. 2000)). Here, there is no dispute that the Plaintiff and Grise were disciplined by different decision-makers.

As for the similarity of conduct requirement, "[i]n order for the conduct of a comparable employee and the Title VII plaintiff to be considered the 'same conduct,' it must be similar in kind and severity." *Barry*, 2008 U.S. App. LEXIS 10305, at *17 (citing *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). The conduct for which Gardner and Grise were disciplined was not the same, and the Wal-Mart policies they were found to have violated were different. The Court does not know all of the facts behind Grise's disciplinary action, but his policy violations and the information provided regarding his ethics investigation indicate bad decisions on his part, a lack of respect, and an inability to get along with co-workers. The Plaintiff was terminated for an integrity violation-he revealed confidential information regarding an credit card fraud investigation to the suspect's husband. Thus, the Plaintiff and Grise did not engage in the same conduct.

Thus, the conclusions that the Plaintiff and Grise did not deal with the same supervisor and did not engage in the same conduct demonstrates that the Plaintiff has failed to adduce evidence from which a reasonable jury could conclude that he and Grise were similarly situated in all relevant respects. Therefore, the Plaintiff has failed to establish the fourth element of his *prima facie* case, and summary judgment is appropriate.

**2. Defendant's Proffered Non-Discriminatory Reason**

Assuming *arguendo* that the Plaintiff could establish a *prima facie* case of discrimination, the Court finds that the Defendant has articulated a legitimate non-discriminatory reason for the Plaintiff's termination: he revealed confidential investigative information which constituted gross

misconduct, and Associates deemed to have engaged in gross misconduct are subject to immediate termination under Wal-Mart's Coaching for Improvement Policy. Therefore, the Defendant has met its burden of production as to this issue.

### 3. Plaintiff's Rebuttal

Assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination, and knowing that the Defendant could meet its burden of producing a legitimate, non-discriminatory reason for the Plaintiff's termination, the Court finds that the Plaintiff would not be able to demonstrate pretext. Pretext may be shown "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "[T]he Plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). The Plaintiff is "'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate the discharge.'" *Id.* at 1084 (emphasis in original) (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)).

The first category is inapplicable here because the Plaintiff admits that he engaged in the conduct that led to his termination, confirmed by his own written statement. Further, the Plaintiff admitted that he knew his job required confidentiality and integrity in guarding information that was not available to people outside of the loss prevention/asset protection department. The Plaintiff also admitted that he was prohibited from discussing a pending

9

investigation, but claims he did not believe the investigation at hand was a "pending" matter. Gardner felt it was not "pending" because nothing further had happened with the investigation and it turned out that the credit card Dawn Robert's used belonged to her niece.

However, there is no evidence that the Plaintiff's confirmed his belief about the nature of the investigation with any supervisor or by consulting any store policy. The Plaintiff simply revealed the information. According to Wal-Mart's policies, that action constituted gross misconduct. The Plaintiff has provided no evidence that Wal-Mart's policies do not provide for termination in such a situation. Thus, the first category is inapplicable in this instance.

The second category is an indirect attack on the credibility of the employer's proffered explanation. *Manzer,* 29 F.3d at 1084. The Plaintiff has proffered no evidence that his disclosure of the confidential information was not the actual reason for his termination. The Plaintiff has simply not shown circumstances which tend to prove that an illegal motivation was more likely than the motivation offered by the Defendant. *Id.* Thus, the second category is inapplicable in this instance.

The third showing "generally 'consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Manzer*, 29 F.3d at 1084). The Plaintiff has not identified any employees were not discharged after revealing confidential information about a pending investigation. Thus, the third category is inapplicable in this instance.

To withstand a motion for summary judgment, the Plaintiff is required to "set forth

10

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56. The Plaintiff's conclusory allegations and subjective beliefs are insufficient evidence to establish a claim of discrimination as a matter of law. The Court holds that the Plaintiff has not met his burden to establish a *prima facie* case for his claim of race discrimination in employment. Even if the Plaintiff had established a *prima facie* case, the Court holds that the Plaintiff has failed to establish that Defendant's proffered reason for his termination was a pretext.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

An appropriate order shall issue.